**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXANDER JAMES BELFI,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-7429** |
| | : | |
| **UNITED STATES OF AMERICA, *et al.*,** | : | |
| **Defendants.** | : | |

# MEMORANDUM

**COSTELLO, J.** **NOVEMBER 20, 2026**

Alexander Belfi, a detainee housed at George W. Hill Correctional Facility ("GWH") filed this civil rights action naming approximately 180 Defendants including federal, Commonwealth, and local officials, police officers, corrections officers, doctors, companies, banks, judges, prosecutors, the United States, the Roman Catholic Church, and 100,000 John and Jane Doe individuals, entities and agencies.[1] Belfi has complied with a prior order and paid the

[1] The complete list of Defendants (including duplications listed in the Complaint) are:

1. United States Of America
2. Commonwealth Of Pennsylvania
3. Delaware County Of Pennsylvania
4. City And County Of Philadelphia, Pennsylvania
5. Commonwealth Of Pennsylvania
6. Delaware County Of Pennsylvania
7. Delaware County Prison Inspectors
8. Lansdowne Police Department
9. Philadelphia Veteran Hospital
10. Office Of Adult Probation Of Delaware County
11. District Attorney Of Delaware County
12. District Attorney Of Delaware County Office Of Criminal Investigations
13. Kenneth West, Esq. (Public Defenders Of Delaware County)
14. Jenna Smith, Esq. (Public Defenders Of Delaware County)
15. City Of Philadelphia
16. Retired Sgt. James D. McCaughan of Lansdowne PD
17. Sgt. Jonathan R. McGowan of Lansdowne PD

18. Sgt. Christopher Schiazza of Lansdowne PD
19. Officer Ronald Lassiter of Lansdowne PD
20. Officer (Ptl) Lawrence Albeitolli
21. Officer Kevin Myers
22. Chief Sgt. Kenneth Rutherford
23. John Doe(S) Constables
24. Lt. William Gordon
25. Detective Brian Alexander
26. Detective Thomas Scarpato
27. Officer Michael Miller
28. Dr. Michele Joy
29. Dr. Matthew Jarrett
30. Dr. Julie Low
31. Dr. Laszo Gyulai
32. Jocelyn Parker
33. William Wesley Skinner
34. Dana Smith (GWH employee)
35. Sara Watts (GWH employee)
36. Olivia Ferrier (GWH employee)
37. Jane & John Does 1-1000 (GWH employee)
38. Aramark Correctional Food Services (or Aramark Or Aramark Food Services)
39. Food Express, Inc.
40. Delaware County Prison (George W. Hill Correctional Facility) Correction Officers
41. Viapath Technologies (Tablet Company At GWHCF)
42. Wellpath (Medical Company At GWHCF)
43. Progressive Insurance Company
44. Pa. Board Of Probation And Parole
45. Superior Court Of PA
46. Supreme Court Of PA
47. BATE (ATF)
48. Federal Bureau Of Investigation (FBI)
49. Pa. Attorney General
50. Administrative Office Of Pennsylvania
51. Springhouse (Prison Drink Mix Company)
52. GTL Enhanced Services, LLC
53. Court Of Common Pleas - Delaware County, Montgomery County And Philadelphia
54. Chester Water Company
55. Interim Warden of GWHCF
56. Philadelphia Parking Authority
57. Department Of License And Inspection (Philadelphia)
58. Office Of Property Assessment (Philadelphia)
59. USAA Federal Savings Bank
60. Wells Fargo
61. Secretary Of Corrections Of Pennsylvania
62. 6 ABC

63. Kathleen Kane (Former Attorney General Of Pa)
64. Tow Decision, Inc
65. Pfizer- Bio N Tech'
66. Dr. Michele Joy (Philadelphia Veteran Hospital Doctor)
67. Dr. Matthew Jarrett (Philadelphia Veteran Hospital Doctor)
68. Dr. Julie Low (Philadelphia Veteran Hospital Doctor)
69. Dr. Laszo Gyulai (Philadelphia Veteran Hospital Doctor)
70. Jocelyn Parker (Social Worker At Philadelphia Veteran Hospital)
71. William Wesley Skinner
72. Dana Keith (GWH employee)
73. Sara Watts (GWH employee)
74. Olivia Ferrier (GWH employee)
75. Jane And John Does 1-1000 (GWH employee)
76. Kenneth West, Esq/ (Former Delaware County Public Defender
77. Jenna Smith, Esq. (Current Or Former Counsel At Delaware County District Attorney)
78. Thomas Brophy, Esq. (President Emeritus Of Marshall Dennehey)
79. Mary Elizabeth Brophy
80. Security Exchange Commission
81. Thomas Wagner, Esq. (Former Counsel At Marshall Dennehey)
82. Thomas Kenny, Esq.
83. Eileen Burns, Esq. (Belfi's Former Counsel At Kenny, Burns & McGill)
84. Meredith Lussier, Esq. (Former Counsel At Marshall Dennehey)
85. Judge Nina Wright Padilla (Philadelphia Court Of Common Pleas President Judge)
86. Judge Ann Osborne (Ret. Judge Of Court Of Common Pleas Delaware County)
87. Judge Kevin Kelly (Current Judge At Of Court Of Common Pleas Delaware County)
88. Coca-Cola
89. Mortgage Electronic Registrations Systems, Inc
90. MERSCORP Holdings, Inc
91. Moody's & Jane/John Doe Mortgage Rating Company 1-1000
92. Sgt. T. Royals (GWH correctional officer)
93. Sgt. M. Short (GWH correctional officer)
94. Sgt. R. Nelson (GWH correctional officer)
95. Sgt. Sadouki (GWH correctional officer)
96. Sgt. Harris (GWH correctional officer)
97. Sgt. Villamarin (GWH correctional officer)
98. Correctional Officers (CO's) L. Sesay
99. S. Sesay (#1) (GWH correctional officer)
100. S. Sesay (#2) (GWH correctional officer)
101. Freeman (GWH correctional officer)
102. Gilbert (GWH correctional officer)
103. Campbell (GWH correctional officer)
104. Kamara (GWH correctional officer)
105. Kennedy Jr. (GWH correctional officer)
106. Williamson (GWH correctional officer)
107. C. Trawally (GWH correctional officer)

---

108. C. Thompson (GWH correctional officer)
109. M. Bah (GWH correctional officer)
110. Owusah Ansah (GWH correctional officer)
111. M. Toure (GWH correctional officer)
112. D. Kendemah (GWH correctional officer)
113. R. Allen (GWH correctional officer)
114. S. Mullbah (GWH correctional officer)
115. Korlie (GWH correctional officer)
116. S. Fofana (GWH correctional officer)
117. Fofana (#2) (GWH correctional officer)
118. Koivogu (GWH correctional officer)
119. Parchment (GWH correctional officer)
120. J. Browne (GWH correctional officer)
121. T. Ford (GWH correctional officer)
122. J. Tatfe (GWH correctional officer)
123. Rivera (GWH correctional officer)
124. D. Gant (GWH correctional officer)
125. Officer Lt. William Gordon
126. Detective Thomas Scarpato
127. Officer Michael Miller
128. Ret. Ofc. James D. McCaughan (Lansdowne Police Officer)
129. Sgt. Jonathan McGowan (Lansdowne Police Officer)
130. Sgt. Christopher Schiazza (Lansdowne Police Officer)
131. Officer Ronald Lassiter Jr. (Lansdowne Police Officer)
132. Officer (Ptl) Lawrence Albertolli (Lansdowne Police Officer)
133. Officer Kevin Myers (Lansdowne Police Officer)
134. Chief Sgt. Kenneth Rutherford (Lansdowne Police Officer)
135. Jane And John Does Officers 1-1000 (Lansdowne Police Officer)
136. Merilyn Jackson (Owner Of 1504 E. Moyamensing Ave, Phila. Pa 19147)
137. Stephen Allen (Owner Of 1500 & 1948 E. Moyamensing Ave, Phila Pa 19147)
138. Food Express USA (Commissary Food Supplier At GWHCF - Dallas, Tx)
139. Food Concepts (615 443-1079)(Drink Mix Company At GWHCF)
140. Taylor Dunn (Delaware County Interim Chief Public Defender)
141. Emily Robb (Delaware County Deputy Public Defender)
142. Philadelphia District Attorney Larry Krasner Defendant
143. Lending Club
144. Judge John Capuzzi Of Delaware County Court Of Common Pleas
145. Judge Idee Fox Of Philadelphia Court Of Common Pleas
146. Former Judge Patricia Mcllnyre Of Philadelphia Court Of Common Pleas Who Presided Over Belfi's Case #17120400)
147. Former Delaware County District Attorney Jack Stollimeier
148. Current Delco DA Tanner Rouse;
149. Clear Inventions. Inc (Emerson) (Headphone Supplier To GWHCF)
150. Bob Barker Company (GWHCF Clothing Supplies)
151. Zoning Board Of Philadelphia

filing fee for this case.[2] For the following reasons, the Complaint will be dismissed on statutory screening pursuant to 28 U.S.C. § 1915A.

---

152. Historical Commission of Philadelphia
153. Bank of America
154. City Council Of Philadelphia
155. Bail Commissioner O'Brien (Approved Warrant For Belfi's Hahnemann Medicals Record In 2015/2016 From Wan-Ant Issue By Grace Wishcum, PA AG)
156. Sgt. Laughlin (GWHCF)
157. Sgt. Long (GWHCF Sgt. CO)
158. Philadelphia Councilman Mark Sequilla
159. Former Attorney General Investigator, Grace Wischum
160. Robert Keller, Esq (Belfi's Former Attorney For Cun-Ent Cases In Delco)
161. Richard Klineburger, Esq (Belfi's Former Counsel For 2015 Criminal Charges In Montco)
162. Google (Alphabet, Inc)
163. Apple, Inc.
164. Sean Brennan (Former Progressive Insurance Employee)
165. Hahnemann's Doctors/Nurses Jane And John Does 1-1000
166. Crozer Chester Doctors/Nurses Jane And John Does 1-1000
167. Flock Safety
168. Axon Enterprise
169. Leonardo (Owner Of Signal Trace)
170. Anne Cranny (Friend Of William Wesley Skillller)
171. Paul Concannon (Former Wells Fargo Mortgage Broker For Belfi's Mortgage At 2251 League Street, Phila Pa)
172. Whitney Klien (Former Wells Fargo Mortgage Broker Assistant Broker For Belfi's Mortgage At 2251 League Street, Phila Pa)
173. HUD
174. ALTA
175. Department Of License And Inspections Executives And Directors
176. United States Of America
177. Roman Catholic Church
178. Jan And John Does 1-100000
179. Jane And John Does Corporations, Agencies, Government Agencies, Unincorporated Corporations And/Or Businesses, And Incorporated Businesses 1-100000
180. Bank of New York Mellon

[2] In the caption of his Complaint, Belfi included as an additional plaintiff the "Estate of David Anthony Belfi." (ECF No. 1.) David Anthony Belfi was apparently his father. The prior Order, filed on October 1, 2026 (ECF No. 6), directed the Estate (incorrectly listed on the docket as the "Estate of Anthony James Belfi") to obtain counsel since an artificial entity generally cannot proceed *pro se* in federal court and Belfi, as a non-attorney, could not represent its interests. *Murray ex rel. Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018); *see*

## I. FACTUAL ALLEGATIONS[3]

---

*also Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). The Estate has not complied with the Order.

In a separately filed motion, Belfi seeks "clarification" of the requirement that the Estate obtain counsel. He asserts that he is the only son of David Anthony Belfi, who died intestate and thus had no "estate," and that what happened to Belfi also "occurred to David Belfi." (ECF No. 10 at 2.) He does not assert that he has been appointed administrator of his father's estate. Whether an estate was created by a will upon the death of his father or his father died intestate, as a non-attorney Belfi may still not bring claims on behalf of any other person or entity, including as administrator of an intestate decedent where there are other beneficiaries or creditors of the estate. *Murray*, 901 F.3d at 171 ("We turn to whether a non-attorney, non-beneficiary administrator like Murray conducts her 'own case' when representing an estate in federal court. 28 U.S.C. § 1654. The answer is no."). Where an estate has creditors, it too may not be "the administrator's own" case because those creditors may have an interest in the assets of the estate. *See id.*, at 171 n.2 (citing *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 211 (5th Cir. 2016); *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 952 (8th Cir. 2005); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997)). Even if Belfi is David's sole beneficiary and there are no creditors, he does not assert he is the administrator and it remains that none of Belfi's claims are plausible as described at length in this Memorandum. Giving him the benefit of the doubt, however, any claim included in this case in the name of David Anthony Belfi will be dismissed without prejudice so that Belfi can allege facts in any amended complaint that he may act as administrator and he is not barred from raising those claims.

The Court notes also that Belfi often refers to other inmates and uses plural pronouns in describing conditions at GWH. For example, he alleges that Sgt. Short, COs Williamson, Gilbert, Rivera, and Sesay routinely lock the inmates in for no reason, slice mattresses, and cut foam cups. (Compl. at 28.) He does not allege that he himself was subjected to that treatment. (*Id.*) To the extent he seeks to assert claims on behalf of other inmates, he may not do that either because he is not an attorney.

Finally, to the extent that Belfi's separately filed motion (ECF No. 10) also seeks the recusal of Judge John R. Padova, the motion will be denied as moot. This case was reassigned to the undersigned on October 6, 2026. (ECF No. 7.) If Belfi seeks recusal of a judge in a different case, he must file a motion under that civil action number.

[3] The factual allegations are taken from Belfi's Complaint and the attached materials (ECF No. 1), to which the Court adopts the sequential pagination assigned by the CM/ECF docketing system. The Court deems the entire submission to constitute the Complaint. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors may be cleaned up as needed. The Court may consider matters of public record when conducting a statutory screening. *See e.g., Medina v. Allentown Police Dep't,* No. 23-2055, 2023 WL 7381461, at *2 (3d Cir. Nov. 8, 2023) (*per curiam*) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

Belfi asserts claims under the United States and Pennsylvania Constitutions claiming he is being unlawfully held as a pretrial detainee as well as being held on a probation violation detainer. (Compl. at 3, 20.) He seeks $1.113 billion based on his complaints about both the fact of his confinement and conditions of his confinement. (*Id*. at 5.) He complains variously about the inadequacy of the prison law library, the March 16, 2026 police criminal complaint ("PCC") from Sharon Hill that resulted in his detention and the resulting actions by District Attorneys (*id*.), and the conditions of confinement at GWH where he is detained, (*id*. at 20). Belfi also complains about an involuntary commitment in December 2020 at the Philadelphia Veterans Hospital, criminal charges in 2016, proceedings in his current criminal case, the amount of his bail, and that the staff at GWH do not understand English or the United States Constitution. (*Id*. at 20-22.)

He claims he arrived at GWH following an arrest in March 17, 2026 with concussion symptoms but an unnamed nurse only recorded that he hit his head and gave him ibuprofen. (*Id*. at 24.) He submitted medical slips and after "weeks" received an Xray, and after months received only an eye exam but no MRI or other testing. (*Id*.) In June he saw a specialist who determined he had a hole and scarring in his dominant left eye and referred him to Wills Eye Hospital. (*Id*.) He claims "the prison" has refused to give him this appointment. (*Id*.) Also during intake on March 17, he was asked about his prescription for Adderall for ADHD, even though it appears Belfi did not inform intake personnel of that condition. (*Id*.) He claims GWH refused to provide the drug and did not give him a "taper" drug. (*Id*. at 25.) Following a separate incident where he hurt his knee, he received a "medical paper from an Xray . . . where it stated the prison [had his] personal, private medical records from the VA and his private doctor." (*Id*.) Belfi never provided consent for GWH to obtain his medical records. (*Id*.)

In June 2026, Belfi chipped a tooth and he claims the dentist used an unsterilized Dremel diamond bit "from a random tool assortment case meant for screws" to grind down the back of his tooth and did not fill the tooth. (*Id.*) He claims he was "sexually harassed" during a search by CERT officers and filed a formal PREA complaint. (*Id.*) He also claims retaliation in the form of "nearly" being sent to solitary confinement apparently for filing a grievance.[4] (*Id.*)

[4] Belfi does not state who retaliated against him. Even if he had identified an official as part of these allegations, any such claim would not be plausible as stated. Although a prisoner has no constitutional right to a grievance process, *see Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*), a prisoner can state a claim based on retaliation for filing a grievance, *see Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (*per curiam*) (holding that a prisoner's filing of a grievance is constitutionally protected conduct (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003))); *Peterson v. Franrak*, No. 25-4538, 2025 WL 3485825, at *5 (E.D. Pa. Dec. 4, 2025). In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Mitchell*, 318 F.3d at 530 (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*).

"An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). For example, "being placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."); *Watson*, 834 F.3d at 423 (concluding that a prisoner "clearly suffered an adverse consequence when [an official] charged him with a Class 1 misconduct"); *Robinson v. Palco*, No. 21-2987, 2022 WL 3009746, at *3 (3d Cir. July 29, 2022) (*per curiam*) (same); *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (holding that the termination of prison employment constitutes adverse action for retaliation purposes). The allegation that Belfi was "nearly" sent to solitary fails to allege that he suffered any consequence, let alone a more than *de minimis* adverse consequence.

In a different portion of his submission, Belfi also asserts he was "retaliated against for submitting grievances with 'Disciplinary Action' AKA the Hole on 8/14. . . . Denied Grievance by numerous COs + Sgt's. Tablet grievance procedure unlawful." (Compl. at 8.) Again, he fails to identify a specific defendant, even by way of a "John Doe," who was personally involved in an act of retaliation for Belfi's exercise of this First Amendment rights. Also, his assertion that the tablet grievance procedure is unlawful fails to allege a claim since detainees have no direct

Belfi claims the water has an iron taste, burns his eyes, smells of chemicals, causes skin issues and, he believes, is contaminated. (*Id*. at 25-26.) The food served by Aramark Correction Services is "non-nutritional," the meat is always cold and is "soy-based, ultra-processed, mystery meat," he has been served chicken only once, and has not had fresh fruit or vegetables. (*Id*. at 26.) The trays have cracks that fill with food residue, are cleaned in a broken washing machine or dipped in water-filled trash cans to clean them, and kitchen workers use their hands to serve food onto the trays. (*Id*.) The kitchen has roach and mouse infestation. (*Id*.) He has used the "same cheap spork for over two months, no napkins." (*Id*.) Meals are routinely late. (*Id*.) He is served too many meals of mainly potatoes. (*Id*. at 30.)

Belfi claims there is an inmate with HEP-A housed in the next cell, that he is locked in his cell for 17 hours each day with no exercise equipment and "no outside." (*Id*. at 26.) He "lives in a toilet room" with a cellmate. Water leaks from the sink, constantly drips, there is no seat for the desk, no proper bedding, he is exposed to secondhand smoke from inmate drug use, HVAC vents are filled with "black debris," and are loud, leaking, and smell of natural gas, and workers use "horrific" chemicals to clean showers. (*Id*.) Correctional Officers threaten him with denials of privileges when he keeps his cell door open even though the inmate handbook only requires them to be closed when the cell is unoccupied, and an unnamed CO has slammed the door in his face. (*Id*. at 27.) There are birds in the dayroom that disturb asbestos fire proofing in the ceiling which falls into his food. (*Id*.) There is no barber on his unit, he has been denied cleaning supplies, and arbitrarily locked in his cell for days at a time without a shower and, when

right to file grievances. *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) ("[P]risoners do not have a constitutional right to prison grievance procedures.") (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).

his toilet got clogged, the COs refused to let him out to use a different toilet. (*Id.*) He has not seen sunlight or felt wind in five months. (*Id.* at 30.) He complains that fire sprinklers are not certified; there is an exposed wire in an exit sign; there is no fire extinguisher on his block; he was locked in while there was a fire in another unit, rather than being evacuated, and breathed fumes; electric outlets are "unrestricted" with no circuit breakers in violation of fire codes; the dayroom lights are always on and light comes into his cell; COs – including CO Williams – shine flashlights that wake him up at night as "a weapon in the arsenal of torture," and cause him headaches due to his eye trauma; and CO Komora, Sgt. Short, J. Brown, and Sgt. L. Coleman each made verbal threats to him. (*Id.* at 30.)

Belfi was denied use of a tablet for the first seventy days he was detained at GWH, which deprived him of access to mail and the law library. (*Id.* at 28.) Sgt. Short, and COs Williamson, Gilbert, Rivera, and Sesay routinely lock the inmates in for no reason, slice mattresses, cut foam cups, and deny him access to the law library for no reason. (*Id.*) The law librarian, Dana Keith (at times referred to in the pleading as Dana Smith), is allegedly incompetent; refused to give Belfi legal papers; challenged his views on the legality of his earlier involuntary mental health confinement and prevented him from reviewing the legality of those documents; refused to give him a police report about a murder; refused him access to the GWH Wikipedia page; could not locate a precedent he wanted; would not give him a printed copy for free of a downloadable publication making him order it through external means but giving in "after significant argument," and also refused to print him a dictionary cited by the United States Supreme Court even though "its [sic] available for free"; and refused to provide descriptions and addresses for any of the Defendants in this case. (*Id.* at 20-21, 28-29.) She also denied him pen, paper and stamped envelopes. (*Id.* at 29.) He asserts he is allowed only two hours a week in the law

library and there are no current legal books. (*Id.*) He was only given one page of lined paper to draft his Complaint for this case and was told he had to buy more in the commissary, but the paper sold there is the wrong size and cannot be scanned. (*Id.* at 30.)

Unrelated to his claims about the conditions of his confinement, Belfi claims that he never signed his bail paperwork "as it was forced down [his] throat by Sgt. McGowan when [he was] arrested" and his detention thus violates his Eighth Amendment rights. (*Id.* at 29.) He mentions the prison failed to transport him to court on July 20, 2026 and states this has happened to other inmates as well. (*Id.* at 30.)

Also unrelated to his claims about the conditions of his confinement, Belfi asserts that in 2019 he was denied a concealed carry permit for a firearm due to having an expired medical marijuana card and "character issues," in violation of his Second Amendment rights. (*Id.* at 31-32.) He also challenges the Controlled Substances Act as unconstitutional; asserts that there is corruption in the legal system, including the Court of Common Pleas; the type of mortgage backed securities that are involved in the foreclosure of his property are illegal and violate RICO; statutes of limitation "are irrelevant in [the] digital era"; he challenges absolute and qualified immunity; and claims that insurance companies "have infiltrated" the justice system. (*Id.* at 33.) He challenges the new media's right to First Amendment protections; mass government surveillance; Pennsylvania's authoritarian and totalitarian laws on the unauthorized practice of law; corruption in Philadelphia; racial discrimination in zoning; Philadelphia's use of old tax maps to hide sewer and water liens; and ATF and Pennsylvania enforced alcohol laws. (*Id.* at 34.) Finally, he claims that property he owned from 2014-2017 that was previously owned by his uncle at 1502 E. Moyamensing Avenue in Philadelphia was unlawfully rezoned. (*Id.* at 35.)

Attached to the Complaint are 78 pages of exhibits including police criminal complaint paperwork and the information underlying the charges for which he is detained at GWH (*id*. at 39-52; 113-116), a criminal complaint and related paperwork from 2020 involving firearms/explosives (*id*. at 53-66); a March 18, 2026 probation violation hearing report and order finding him in violation and incarcerated pending disposition of the new charges (*id*. at 67-71); a statement by Belfi about his arrest and intake at GWH seeking criminal charges against police officers (*id*. at 74); prison medical records (*id*. at 76); a PREA complaint (*id*. at 78); a GWH disciplinary report (*id*. at 80-81); Pennsylvania Mental Health Procedures Act ("MHPA") paperwork from December 30, 2020 (*id*. at 83-90); a bail bond dated March 17, 2026 containing Belfi's criminal record history (*id*. at 91-105); a copy of a firearms statute (*id*. at 106-109); and a diagram of Belfi's unit at GWH and a handwritten calendar (*id*. at 110-111).

After submitting his Complaint, Belfi filed motion seeking discovery and immediate injunctive relief. (ECF No. 2.) The requested injunctive relief is: his immediate release from custody; the release of all pretrial detainees held at GWH; the relocation of all inmates serving sentences there; a legal review of all of their cases as well as the cases of those serving probationary sentences in Delaware County; an order prohibiting the Lansdowne Police Department, Delaware County District Attorney, and the Courts of Common Pleas from enforcing any laws within the Commonwealth pending an investigation; an order stopping construction of high-rise apartments on Christopher Columbus Boulevard; the filing of criminal charges; a referral to the FBI; the shutting down of GWH; the removal of all COs he has named in this case; an order that GWH serve nutritional food; that he be allowed to use the law library, receive Adderall, Klonopin, weight loss drugs, proper eye care, and use of the gym twice weekly; the return of his repossessed truck; a stay of all cases against him in Philadelphia and

Delaware Counties; the deletion of all evidence related to his 2016 arrest; the certification of a class action; an order prohibiting updates/changes to Philarecords.gov, the websites of the Free Library and other City websites; a halt to all electronic mortgage registrations systems; that he be given pen, paper, envelopes, stamps and file folders; and that the United States Patent Office suspend revocations or cancellations of his patents. (*Id*. at 5-8.)

Belfi also filed a 71-page petition for writ of habeas corpus using the same civil action number as this civil case. (*See* ECF No. 9.) In it, he relates the background of his confinement at the Philadelphia Veterans Hospital under the MHPA, the search of his home that discovered weapons leading to his earlier criminal charges, allegedly illegal probation sentence, and the arrest for which he is currently held at GWH that occurred while serving his probationary sentence. (*Id*. at 1-2.) He asks for his immediate release. (*Id*. at 6.)

A review of publicly available court records from Delaware County shows that Belfi is detained at GWH awaiting trial on charges of institutional vandalism, *Commonwealth v. Belfi*, CP-23-CR-0001116-2026 (C.P. Delaware), and aggravated assault, strangulation, simple assault, recklessly endangering another person, and harassment, *Commonwealth v. Belfi*, CP-23-CR-0001723-2026 (C.P. Delaware). He also claims he is being "held on a detainer for an illegal, unconstitutional, unlawful and stale probation case: CP-23-CR-0002432-2021." (Compl. at 20.) Belfi is proceeding *pro se* in his criminal cases.

## II. STANDARD OF REVIEW

Although Belfi has paid the filing fee in full, the Court has the authority to screen the Complaint pursuant to 28 U.S.C. § 1915A. *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*). Section

1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim for relief under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). The Court's continuing obligation to assure its jurisdiction includes an assessment of

whether a case has become moot or if the plaintiff lacks standing to bring the claim. *See Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.") (citation omitted); *see also Boley v. Universal Health Servs., Inc.,* 36 F.4th 124, 130 (3d Cir. 2022) (same).

Because Belfi is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III. DISCUSSION

### A. Preliminary Issues

Belfi's Complaint is "best described as a 'kitchen sink' or 'shotgun' complaint because it essentially seeks to bring 'every conceivable claim against every conceivable defendant.'" *Anderson v. First Premier Bank,* No. 25-5502, 2025 WL 3214776, at *6 (E.D. Pa. Nov. 17, 2025) (quoting *Talley v. Harper*, No. 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31,

2017)). Courts have "repeatedly criticized" this type of pleading as "troublesome for many reasons." *Id.* (quoting *Talley,* 2017 WL 413069, at *2).

> For one thing, complaints like [that] . . . unfairly burden defendants and courts. The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a defendant or the Court. It is the plaintiff's burden under Rule 8 to reasonably investigate his claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.
>
> It is important to note that a "kitchen-sink" or "shotgun" complaint also harms the plaintiff who brings it. In most cases, a genuine dispute that supports a viable legal claim underlies a plaintiff's complaint. But this genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of which may not rise to the level of a constitutional claim.

*Anderson,* 2025 WL 3214776, at *6 (internal quotations and citations omitted). The Court notes at the outset that Belfi's claims roughly divide between those concerning the fact that he is detained, his conditions of confinement at GWH, the medical care he received there, and issues concerning access to the law library. But his Complaint suffers from numerous and serious deficiencies that will be discussed first.

**1. Claims under the Pennsylvania Constitution**

Belfi seeks to assert claims under both the United States and Pennsylvania Constitutions. But "Pennsylvania does not recognize a private right of action for damages in a lawsuit alleging a violation of the Pennsylvania Constitution."[5] *Moss v. Pennsylvania*, 838 F. App'x. 702, 708 (3d Cir. 2020) (*per curiam*) (citing *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa.

---

[5] While Pennsylvania courts and the United States Court of Appeals for the Third Circuit have recognized that a plaintiff may maintain a successful cause of action directly under the provisions of the Pennsylvania Constitution for equitable remedies such as injunctive and declaratory relief, *see Pocono Mtn. Charter Sch. v. Pocono Mtn. Sc. Dist.*, 442 F. App'x 681, 688 (3d Cir. 2011) (citing *Moeller v. Bradford County*, 444 F. Supp. 2d 316, 320-21 (M.D. Pa. 2006), none of Belfi's claims are otherwise plausible for reasons discussed later, defeating his request for that injunctive relief.

Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")); *see also Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*) ("Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution."); *Spriggs v. Salamon*, No. 23-1756 , 2024 WL 5239879, at *6 (E.D. Pa. Dec. 27, 2024) (same, collecting non-precedential decisions of the United States Court of Appeals for the Third Circuit). As there is no private right of action for damages under the Pennsylvania Constitution, these claims are not plausible. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution").

**2. Claims against Improper Defendants**

**A. State Actor/Personal Involvement Requirements**

For federal constitutional claims, the vehicle by which they may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some

person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

In addition to the "state actor" requirement, *see*, *e.g.*, *Pinkney v. Meadville, Pa.*, No. 24-2873, 2025 WL 2694099, at *4 (3d Cir. Sept. 22, 2025) (holding that, without state action, a § 1983 claims fails), "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. N. J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995)); *Rode*, 845 F.2d at 1201 n.6).

Belfi names numerous non-state actors that may not be held liable for constitutional violations under § 1983. These include the following Defendants identified as public defenders and private attorneys: Kenneth West, Esq., Jenna Smith, Esq., Taylor Dunn (Delaware County Interim Chief Public Defender), Thomas Brophy, Esq. (President Emeritus Of Marshall Dennehey), Mary Elizabeth Brophy, Thomas Wagner, Esq. (Former Counsel At Marshall Dennehey), Thomas Kenny, Esq., Eileen Burns, Esq. (Belfi's Former Counsel At Kenny, Burns & Mcgill), Meredith Lussier, Esq. (Former Counsel At Marshall Dennehey), Taylor Dunn

(Delaware County Interim Chief Public Defender), Emily Robb (Delaware County Deputy Public Defender), Robert Keller, Esq (Belfi's Former Attorney For Cun-Ent Cases In Delco), and Richard Klineburger, Esq (Belfi's Former Counsel For 2015 Criminal Charges In Montco). Section 1983 claims against these Defendants are not plausible. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (footnote omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."); *Clark v. Punshon*, 516 F. App'x 97, 99 (3d Cir. 2013) (*per curiam*) (noting that a court-appointed attorney is not a state actor for purposes of § 1983); *Webb v. Chapman*, 852 F. App'x 659, 660 (3d Cir. 2021) (*per curiam*) ("[A]ttorneys representing individuals in criminal proceedings generally are not state actors for purposes of § 1983."); *Singh v. Freehold Police Dep't*, No. 21-10451, 2022 WL 1470528, at *2 (D.N.J. May 10, 2022) ("Plaintiff['s] dissatisfaction with the representation provided by Mr. Moschella does not provide a basis for a civil rights claim against him.").

Belfi has also named private individuals, corporations and entities not alleged to have exercised the power of the state, acted in concert with state officials, or to have so insinuated themselves with state actors that they must be recognized as state actors themselves. *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (setting forth tests under which private entities can be liable under § 1983 as (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the

challenged activity."). These Defendants are: Progressive Insurance Company, Chester Water Company, USAA Federal Savings Bank, Wells Fargo, 6 ABC, Tow Decision, Inc., Pfizer- Bio N Tech', Coca-Cola, Mortgage Electronic Registrations Systems, Inc., MERSCORP Holdings, Inc., Moody's & Jane/John Doe Mortgage Rating Company 1-1000, Merilyn Jackson (Owner Of 1504 E. Moyamensing Ave, Phila. Pa 19147), Stephen Allen (Owner Of 1500 & 1948 E. Moyamensing Ave, Phila Pa 19147), Lending Club, Google (Alphabet, Inc.), Apple, Inc., Sean Brennan (Former Progressive Insurance Employee), Flock Safety, Axon Enterprise, Leonardo (Owner Of Signal Trace), Anne Cranny (Friend Of William Wesley Skillller), Paul Concannon (Former Wells Fargo Mortgage Broker For Belfi's Mortgage At 2251 League Street, Phila Pa), Whitney Klien (Former Wells Fargo Mortgage Broker Assistant Broker For Belfi's Mortgage At 2251 League Street, Phila Pa), Bank of America, and Bank of New York Mellon. They will be dismissed from the case.

**B. Non-persons**

Belfi has named the Lansdowne Police Department and GWH/Delaware County Prison. These entities are not "persons" within the meaning of § 1983. *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to § 1983 because it is a sub-division of its municipality); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010) (holding that a jail is not a "person"). He has also named Philadelphia city agencies that are not suable entities under § 1983 because they do not have a separate legal existence. *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (holding that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall

be in the name of the City of Philadelphia"). Accordingly, claims against the Department Of License And Inspection (Philadelphia), Office Of Property Assessment (Philadelphia), Zoning Board Of Philadelphia, Historical Commission of Philadelphia, and City Council Of Philadelphia will also be dismissed.

**C. Immune Defendants**

Belfi has also named Judges who are described as acting in their judicial capacities when they violated his rights: Judge Nina Wright Padilla, Judge Ann Osborne, Judge Kevin Kelly, Judge John Capuzzi, Judge Idee Fox, and Bail Commissioner O'Brien. These claims are also implausible because the judges are entitled to absolute immunity. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (holding that judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction).

Belfi has named the District Attorney of Delaware County, "Jenna Smith, Esq. (Current Or Former Counsel At Delaware County District Attorney)", Philadelphia District Attorney Larry Krasner, former Delaware County District Attorney Jack Stollimeier and current Delco DA Tanner Rouse. While it is not entirely clear, it appears they were named as Defendants due to their involvement in prosecuting Belfi's various criminal cases. Prosecutors are entitled to absolute immunity from liability under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). Absolute immunity extends to the decision to initiate a prosecution, *id.* at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and

appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (citation omitted); *see also id.* at 164 (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). Thus, to the extent he seeks to hold these Defendants liable under § 1983 for actions they took representing the Commonwealth, those claims are also not plausible.[6]

### D. Federal Defendants

Belfi has named the federal government and several of its agencies that are entitled to sovereign immunity for *Bivens*[7] claims absent an explicit waiver: United States Of America, BATE (ATF), Philadelphia Veteran Hospital, Federal Bureau Of Investigation (FBI), Securities Exchange Commission, and HUD. *See Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 72 (2001); *F.D.I.C. v. Meyer,* 510 U.S. 471, 486 n. 11 (1994); *Jaffee v. United States,* 592 F.2d 712, 717 (3d Cir. 1979). These Defendants will also be dismissed.

[6] The Court is simply unable to discern from Belfi's "kitchen sink" style pleading whether there are any claims against a prosecutor that are **not** based on that person's representation of the Commonwealth. Accordingly, the Court will not terminate the prosecutor Defendants at this time.

[7] The basis for asserting a constitutional claim against a federal official is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 392 (1971).

### E. Commonwealth Entities

Belfi has also named Commonwealth entities, including its courts and its agencies, against which he seeks money damages: the Commonwealth of Pennsylvania, Superior Court Of PA, Supreme Court Of PA, Pa. Board Of Probation And Parole, Courts of Common Pleas of Delaware County, Montgomery County, and Philadelphia, Office Of Adult Probation Of Delaware County, Administrative Office Of Pennsylvania. But they are also are not considered "persons" under § 1983 and, moreover, are entitled to immunity under the Eleventh Amendment. *See Karns v. Shanahan*, 879 F.3d 504, 519 (3d Cir. 2018) (states are not considered "persons" for purposes of § 1983) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)); *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (explaining that a state agency may not be sued under § 1983 because it is not a "person"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984) (holding that the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment); *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) ("Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity."); *see also Schutzeus v. Pa. Bd. of Prob. & Parole*, No. 20-2031, 2022 WL 58541, at *4 (3d Cir. 2022) (explaining that "parole officers are state employees who serve the courts under the direction of their common employer, the Commonwealth government."). Pennsylvania has not been waived this immunity. *See* 42 Pa. Cons. Stat. § 8521(b). These Defendants will also be dismissed.

### F. "No Allegation" Defendants

Finally, Belfi lists numerous defendants, not otherwise mentioned in the preceding paragraphs, against whom he makes no allegations at all, let alone stating how they were personally or legally responsible for a constitutional violation. These include:

1. Office Of Criminal Investigations
2. City Of Philadelphia
3. Retired Sgt. James D. McCaughan of Lansdowne PD
4. Sgt. Christopher Schiazza of Lansdowne PD
5. Officer Ronald Lassiter of Lansdowne PD
6. Officer (Ptl) Lawrence Albeitolli
7. Officer Kevin Myers
8. Chief Sgt. Kenneth Rutherford
9. John Doe(S) Constables
10. Lt. William Gordon
11. Detective Brian Alexander
12. Detective Thomas Scarpato
13. Officer Michael Miller
14. Dr. Michele Joy
15. Dr. Matthew Jarrett
16. Dr. Julie Low
17. Dr. Laszo Gyulai
18. Jocelyn Parker
19. William Wesley Skinner
20. Dana Smith (GWH employee)
21. Sara Watts (GWH employee)
22. Olivia Ferrier (GWH employee)
23. Jane & John Does 1-1000 (GWH employee)
24. Food Express, Inc.
25. Viapath Technologies (Tablet Company At GWHCF)
26. Wellpath (Medical Company At GWHCF)
27. Pa. Attorney General
28. Springhouse (Prison Drink Mix Company)
29. GTL Enhanced Services, LLC
30. Interim Warden of GWHCF
31. Philadelphia Parking Authority
32. Secretary Of Corrections Of Pennsylvania
33. Kathleen Kane (Former Attorney General Of Pa)

34. Dr. Michele Joy (Philadelphia Veteran Hospital Doctor)
35. Dr. Matthew Jarrett (Philadelphia Veteran Hospital Doctor)
36. Dr. Julie Low (Philadelphia Veteran Hospital Doctor)
37. Dr. Laszo Gyulai (Philadelphia Veteran Hospital Doctor)
38. Jocelyn Parker (Social Worker At Philadelphia Veteran Hospital)
39. William Wesley Skinner
40. Sgt. T. Royals (GWH correctional officer)
41. Sgt. R. Nelson (GWH correctional officer)
42. Sgt. Sadouki (GWH correctional officer)
43. Sgt. Harris (GWH correctional officer)
44. Sgt. Villamarin (GWH correctional officer)
45. Freeman (GWH correctional officer)
46. Gilbert (GWH correctional officer)
47. Campbell (GWH correctional officer)
48. Kennedy Jr. (GWH correctional officer)
49. C. Trawally (GWH correctional officer)
50. C. Thompson (GWH correctional officer)
51. M. Bah (GWH correctional officer)
52. Owusah Ansah (GWH correctional officer)
53. M. Toure (GWH correctional officer)
54. D. Kendemah (GWH correctional officer)
55. R. Allen (GWH correctional officer)
56. S. Mullbah (GWH correctional officer)
57. Korlie (GWH correctional officer)
58. S. Fofana (GWH correctional officer)
59. Fofana (#2) (GWH correctional officer)
60. Koivogu (GWH correctional officer)
61. Parchment (GWH correctional officer)
62. T. Ford (GWH correctional officer)
63. J. Tatfe (GWH correctional officer)
64. D. Gant (GWH correctional officer)
65. Officer Lt. William Gordon
66. Detective Thomas Scarpato
67. Officer Michael Miller
68. Ret. Ofc. James D. McCaughan (Lansdowne Police Officer)
69. Sgt. Christopher Schiazza (Lansdowne Police Officer)
70. Officer Ronald Lassiter Jr. (Lansdowne Police Officer)
71. Officer (Ptl) Lawrence Albertolli (Lansdowne Police Officer)
72. Officer Kevin Myers (Lansdowne Police Officer)
73. Chief Sgt. Kenneth Rutherford (Lansdowne Police Officer)

74. Jane And John Does Officers 1-1000 (Lansdowne Police Officer)
75. Food Express USA (Commissary Food Supplier At GWHCF - Dallas, Tx)
76. Food Concepts (615 443-1079)(Drink Mix Company At GWHCF)
77. Clear Inventions. Inc (Emerson) (Headphone Supplier To GWHCF)
78. Bob Barker Company (GWHCF Clothing Supplies)
79. Philadelphia Councilman Mark Sequilla
80. Former Attorney General Investigator, Grace Wischum
81. Hahnemann's Doctors/Nurses Jane And John Does 1-1000
82. Crozer Chester Doctors/Nurses Jane And John Does 1-1000
83. Department Of License And Inspections Executives And Directors
84. Roman Catholic Church
85. Jane And John Does 1-100000
86. Jane And John Does Corporations, Agencies, Government Agencies, Unincorporated Corporations And/Or Businesses, And Incorporated Businesses 1-100000

These individuals and entities will also be dismissed.

**3. Time Barred Claims**

Apart from the issues with the parties he has named, Belfi asserts claims that are time barred on their face. He complains about an involuntary commitment in December 2020 at the Philadelphia Veterans Hospital (Compl. at 20-22), and asserts that in 2019 he was denied a concealed carry permit for a firearm due to having an expired medical marijuana card and "character issues" in violation of his Second Amendment rights, (*id*. at 31-32). Finally, he claims that property he owned at 1502 E. Moyamensing Avenue in Philadelphia from 2014-2017, that was previously owned by his uncle, was unlawfully rezoned. (*Id*. at 35.)

"A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Dotson v. Galapio*, No. 24-1204, 2024 WL 1736373, at *1 (3d Cir. Apr. 23, 2024) (affirming district court's dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) of excessive force claims as time-barred where the expiration of the statute of limitations was apparent on the face of the complaint). The timeliness of a § 1983 claim is

governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach*, 589 F.3d at 634 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)).

The "standard rule" under federal law is that a claim accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. SEC*, 568 U.S. 442, 448 (2013) (citation omitted); *see also William A. Graham Co. v. Haughey*, 646 F.3d 138, 146-47 (3d Cir. 2011). It is often the case, then, that a claim accrues – and the statute of limitations begins to run – when a violation or injury actually occurs. This is sometimes referred to as the "occurrence rule." *See G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 613 (3d Cir. 2015). But the running of a statute of limitations is not always co-extensive with the date of accrual. *See William A. Graham Co.*, 646 F.3d at 149 ("[A]ccrual is defined in terms of the objective existence of a viable cause of action, not in terms of whether the limitations clock has started. It happens to be the case that the limitations period generally commences once a claim exists, but a running clock is not the sine qua non of accrual."). Rather, there are "various statutory and judge-made rules that operate to toll the running of the limitations period." *Id.* at 147. "Time that passes while a statute is tolled does not count against the limitations period." *Id.* at 147-48. One such judge-made rule is the federal "discovery rule." Under that rule, the statute of limitations is tolled until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Romero v. Allstate Corp.*, 404 F.3d 212, 222 (3d Cir. 2005); *see also William A. Graham Co.*, 646 F.3d at 150 (holding that "the discovery rule . . . operate[s] to toll the running of the limitations period after a cause of action has accrued").

The limitations period applicable to Belfi's § 1983 claims is two years. Belfi filed this case on September 25, 2026. It is apparent from the face of the complaint that the claims listed above accrued in 2017, 2019 and 2020 respectively when he had a complete and present cause of action to challenge the rezoning of property he owned no later than 2017, his 2019 denial of a concealed carry permit, and claims arising from his 2020 involuntary commitment. There is no cause apparent on the face of the Complaint to support the tolling of the statute. Accordingly, these claims are untimely and will be dismissed on this ground.

**4. Generalized Claims**

Belfi challenges the Controlled Substances Act as unconstitutional; asserts that there is corruption in the legal system, including the Court of Common Pleas; the type of mortgage backed securities that are involved in the foreclosure of his property are illegal and violate RICO; statutes of limitation "are irrelevant in [the] digital era"; he challenges absolute and qualified immunity; and claims that insurance companies "have infiltrated" the justice system. (Compl. at 33.) He challenges the new media's right to First Amendment protections; mass government surveillance; Pennsylvania's authoritarian and totalitarian laws on the unauthorized practice of law; corruption in Philadelphia; racial discrimination in zoning; Philadelphia's use of old tax maps to hide sewer and water liens; and ATF and Pennsylvania enforced alcohol laws. (*Id*. at 34.) He fails to allege any facts to support that he has standing to raise these issues.

Article III of the Constitution limits the power of the federal judiciary to the resolution of cases and controversies. *Yaw v. Del. River Basin Comm'n,* 49 F.4th 302, 310 (3d Cir. 2022). As the United States Supreme Court explained, "[u]nder Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 423 (2021). "Part of the case-or-controversy requirement is the requirement that plaintiffs have standing to sue."

*Yaw,* 49 F.4th at 310 (citing *Raines v. Byrd,* 521 U.S. 811, 818 (1997)). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion,* 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560-561); *see also Blunt v. Lower Merion Sch. Dist.,* 767 F.3d 247, 278 (3d Cir. 2014) (finding for there to be an injury-in-fact, a plaintiff must claim "the invasion of a concrete and particularized legally protected interest" resulting in harm "that is actual or imminent, not conjectural or hypothetical.") (citations omitted). "'For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). "In sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion,* 594 U.S. at 424 (quoting *Am. Legion v. Am. Humanist Ass'n,* 588 U.S. 29, 87 (2019)). The party invoking federal jurisdiction bears the burden of demonstrating that he has standing. *See id.* at 430–31.

To the extent Belfi is attempting to address general grievances about government, he has not stated a case or controversy over which this Court has jurisdiction because "[t]he Supreme Court has consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Kaetz v. United States,* 858 F. App'x 472, 474 (3d Cir. 2021) (*per curiam*) (internal quotations and citations omitted) (quoting *Lance v. Coffman*, 549 U.S. 437, 439 (2007))); *see also Warth v. Seldin*, 422

U.S. 490, 499 (1975) ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." (citations omitted)). Accordingly, these claims will be dismissed without prejudice for lack of jurisdiction.

**5. Release from Confinement**

Belfi's § 1983 claims seeking immediate release from custody, however labeled, are not plausible. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Muhammad v. Close*, 540 U.S. 749, 750 (2004) (*per curiam*) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," rather than a § 1983 action (citing *Preiser*, 411 U.S. at 500)). The rule of *Preiser* means that a "whenever [a prisoner's] challenge ultimately attacks the 'core of habeas' — the validity of the continued conviction or the fact or length of the sentence — [the] challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition." *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002). Accordingly, Belfi's claims seeking release from confinement will be dismissed. *See Garrett v. Murphy*, 17 F.4th 419, 430 (3d Cir. 2021) ("[W]henever a plaintiff pleads a violation of § 1983 and effectively seeks habeas relief, the plaintiff fails to state a § 1983 claim. Instead, the prisoner's only federal remedy is through a writ of habeas corpus after exhausting state remedies."). All claims based on the fact of Belfi's past or present confinement will be dismissed without prejudice and Belfi's habeas corpus petition, improperly filed under

this civil action number, will be stricken so that Belfi can pursue habeas relief in a properly filed separate proceeding if he so chooses.

**B. Conditions of Confinement Claims**

Moving beyond the numerous preliminary defects in his Complaint, Belfi alleges facts about substandard conditions under which he is confined at GWH. The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3. In general, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))); *cf. Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

**1. Food**

Belfi complains that the food served by Aramark Correction Services is innutritious, food trays are dirty, the kitchen has infestation, he has to use sporks, there are no napkins, meal service is late, he is served too many potatoes, the meat is cold and contains soy, and the food lacks variety. (*Id*. at 26.) Prisoners are entitled to a "nutritionally adequate diet." *Tapp v. Proto*, 718 F. Supp. 2d 598, 621 (E.D. Pa. 2010), *aff'd*, 404 F. App'x 563 (3d Cir. 2010). A constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the

officials acted with a sufficiently culpable state of mind)." *Cephas v. Delaware County*, No. 25-1176, 2025 WL 3041872, at *3 (E.D. Pa. Oct. 30, 2025) (citing *Duran v. Merline*, 923 F. Supp. 2d 702, 719-720 (D.N.J. 2013)).

Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." *Duran*, 923 F. Supp. 2d at 720 (internal quotations omitted). To meet the subjective prong, a detainee must generally assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))); *cf. Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Belfi's conclusory allegations against Aramark that the food is innutritious and his claim the food is possibly tainted are insufficient to satisfy either the objective or subjective components of a due process claim. Belfi's allegations do not satisfy the objective requirement because "isolated instances of contaminated or spoiled food, while certainly unpleasant, are not unconstitutional." *Duran*, 923 F. Supp. 2d at 720 ("Being served cold meals . . . is not 'punishment' under *Bell*. So long as the food is nutritionally adequate, the mere fact that it is unvaried or cold does not give rise to a constitutional violation . . ." (citing cases). While he complains he is served too many potatoes and the meat is cold and contains soy, he does not

allege he was malnourished, or that he or others became ill due to systemic problems with kitchen conditions, or inadequate or spoiled food.

Belfi also has failed to satisfy the subjective component of the *Stevenson* test. The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *See Farmer*, 511 U.S. at 839-40. He has not offered any facts from which a court could reasonably infer deliberate indifference by Aramark with respect to food quality or to the minimum requirements of providing a non-harmful diet based on the conditions he describes. Without any allegation necessary to demonstrate substantial nutritional deprivation on a recurring basis or subjective recklessness, the claims are implausible.

**2. Water**

Belfi complains about the quality of the water, claiming that it has an iron taste, burns his eyes, smells of chemicals, causes skin issues and, he believes, is contaminated. (*Id*. at 25-26.) Depriving an inmate of potable drinking water for days is objectively serious. *See Gibson v. Crouch*, No. 20-2021, 2022 WL 7352267, at *2-3 (3d Cir. Oct. 13, 2022) (*per curiam*); *see also Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) ("[T]here is no doubt that potable water constitutes a basic human need."); *see also Nguyen v. Biter*, No. 11-809, 2013 WL 5670875, at *2 (E.D. Cal. Oct. 16, 2013), *report and recommendation adopted*, 2013 WL 6283843 (E.D. Cal. Dec. 4, 2013) (denying motion dismiss claim based on exposure to arsenic-tainted water at prison where plaintiff alleged that Defendant was aware the level of arsenic in the prison's water exceeded federal standards spanning at least two years, during one of which Defendant was the Acting Warden). Belfi does not allege he was denied water; he claims the water has an unpalatable taste and smell. Moreover, he merely states that he "believes" it is contaminated. These assertions do not rise to the level of an objectively serious

deprivation; moreover, Belfi has not alleged that any named Defendant was personally involved in creating the condition, let alone that any Defendant acted with a sufficiently culpable state of mind. The claim is not plausible for this reason.

**3. Cell Conditions**

Belfi claims there is an inmate with HEP-A in the next cell, that he is locked in his cell for 17 hours each day with no exercise equipment and "no outside." (Compl. at 26.) He "lives in a toilet room" with a cellmate. Water leaks from the sink, constantly drips, there is no seat for the desk, no proper bedding, he is exposed to secondhand smoke from inmate drug use, HVAC vents are filled with "black debris," and are loud, leaking, and smell of natural gas, and workers use "horrific" chemicals to clean showers. (*Id.*) Unspecified Correctional Officers threaten him when he keeps his cell door open even though the inmate handbook only requires them to be closed when the cell is unoccupied, and an unnamed CO has slammed the door in his face. (*Id.* at 27.) There are birds in the dayroom that disturb asbestos fire proofing in the ceiling which falls into his food. (*Id.*) There is no barber on his unit, he has been denied cleaning supplies, and arbitrarily locked in his cell for days at a time without a shower and, when his toilet got clogged, the COs refused to let him out to use a different toilet. (*Id.*) He has not seen sunlight or felt wind in five months. (*Id.* at 30.) He complains that fire sprinklers are not certified; there is an exposed wire in an exit sign; there is no fire extinguisher on his block; he was locked in while there was a fire in another unit, rather than being evacuated, and breathed fumes; electric outlets are "unrestricted" with no circuit breakers in violation of fire codes; and the dayroom lights are always on and light comes into his cell.

A conscious disregard of a serious risk to the detainee's health or safety can state a plausible claim. *See Seiter*, 501 U.S. at 298-99. But certain unsanitary conditions, while

uncomfortable or unpleasant, may not rise to the level of sufficiently serious or punitive in nature to state a plausible claim. *See*, *e.g.*, *Thomas v. SCI Graterford*, No. 11-6799, 2014 WL 550555, at *4-5 (E.D. Pa. Feb. 12, 2014) (concluding that while the presence of insects in prison was uncomfortable, plaintiff had not "demonstrated an unconstitutional threat to his health and safety"); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 467 (M.D. Pa. 2010) (infestation with roaches, spiders, worms, gnats, mice, and other unknown insects was uncomfortable but not unconstitutional); *Hill v. Smith*, No. 05-1724, 2005 WL 2666597, at *7 (M.D. Pa. Oct. 19, 2005) (concluding that mice and cockroaches in the cell are "admittedly uncomfortable conditions [that] . . . do not, by themselves articulate a situation that could be characterized as cruel and unusual punishment"). *But see also Southerland v. County of Hudson*, 523 F. App'x 919, 921-22 (3d Cir. 2013) (vacating dismissal of due process claim based on allegation that pretrial detainee was kept in his cell for 23 hours per day for 5 days out of the week, and for 32 hours over the course of the remaining two days of the week, where the confinement was not due to a misbehavior report, disciplinary infraction, or any other documentation justifying his assignment to those conditions). As with his claim involving the drinking water in his cell, whether or not he has described conditions that rise to the level of "punishment," Belfi fails to allege that any named Defendant was personally involved in creating these condition, let alone that any Defendant acted with a sufficiently culpable state of mind. The cell condition claims are also not plausible for this reason.

**4. Shining Flashlights and Verbal Threats**

Belfi does identify one Corrections Officer, CO Williams, who shined his flashlight at him while he slept, which he floridly describes as "a weapon in the arsenal of torture." (Compl. at 30.) He claims this caused him headaches due to his eye trauma. (*Id.*) Without more, this

sparse allegation about an isolated incident fails to state a claim because it does not plausibly assert that the conditions of confinement amounted to punishment or deprived Belfi of any basic human need for a significant period of time. *Seiter*, 501 U.S. at 305.

Belfi alleges that CO Komora, Sgt. Short, J. Brown, and Sgt. L. Coleman each made unspecified verbal threats to him. (Compl. at 30.) The fact that Belfi received verbal threats, even if the threat involved bodily harm, does not state a § 1983 claim because verbal threats or taunts, without more, are insufficient to violate the Constitution. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (*per curiam*) (holding that threats that inmate was a "marked man and that his days were numbered" did not state Eighth Amendment claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) (*per curiam*) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001) (holding that threat to spray inmate with mace did not violate Eighth Amendment); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").

**C. Law Library and Tablet Access Claims – Sixth Amendment**

Belfi was denied use of a tablet for the first seventy days he was housed at GWH, which he asserts deprived him of access to mail and the law library. (Compl. at 28.) He claims that Sgt. Short, COs Williamson, Gilbert, Rivera, and Sesay denied him access to the law library for no reason. (*Id.*) He also claims that the law librarian, Dana Keith, is incompetent; refused to give him legal papers; challenged his views on the legality of his earlier involuntary mental health confinement and prevented him from reviewing the legality of those documents; refused to give him a police report about a murder; refused him access to the GWH Wikipedia page;

could not locate a precedent he wanted; would not give him a printed copy for free of a downloadable publication making him order it through external means but giving in "after significant argument," and also refused to print him a dictionary cited by the United States Supreme Court even though "its [sic] available for free"; and refused to provide descriptions and addresses for any of the Defendants in this case. (*Id*. at 20-21, 28-29.) She also denied him pen, paper and stamped envelopes. (*Id*. at 29.) He asserts he is allowed only two hours a week in the law library and there are no current legal books. (*Id*.) He was only given one page of lined paper to draft his Complaint for this case and was told he had to buy more in the commissary, but the paper sold there is the wrong size and cannot be scanned. (*Id*. at 30.) The Court interprets these allegations to involve Belfi's Sixth Amendment rights to the extent they involve his criminal case and his First Amendment right to access the courts to the extent they involve his ability to file this civil case.

"The Supreme Court has recognized that 'adequate law libraries' are a component of the right of access to the courts." *O'Connell v. Williams*, 241 F. App'x 55, 57 (3d Cir. 2007) (*per curiam*) (quoting *Bounds v. Smith,* 430 U.S. 817, 828 (1977) (*abrogated by Lewis v. Casey*, 518 U.S. 343 (1996). Supreme Court precedent also establishes a Sixth Amendment right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975) ("Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment."). But *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, so an inmate "cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351

(1996); *see also Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) ("Diaz has not alleged any injury, however, traceable to the law library's deficiencies.").

The Supreme Court has also stated that "*Faretta* says nothing about any specific legal aid that the State owes a pro se criminal defendant." *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (reversing grant of writ of *habeas corpus* because the law library access right was not clearly established). Moreover, an adequate prison law library is but one of many acceptable ways to satisfy a pretrial detainee's right to access the courts. *Bounds*, 430 U.S. 817, 831. The right can be satisfied instead, for example, by appointing an attorney for the detainee. *Diaz*, 532 F. App'x at 63 (first citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988) then *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996) (holding that prisoner did not have right to access law library because he had court-appointed counsel)). The right can also be satisfied with the help of paralegals. *Id*. (citing *Bounds*, 430 U.S. at 831). Thus, a prison regulation restricting a pretrial detainee's use of the law library will be unconstitutional where it "unreasonably burden[s] the inmate's opportunity to . . . prepare his defense." *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001) (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978) (quotation modified)).

While Belfi makes numerous allegations about how Defendant Keith was "incompetent" and states in conclusory terms that the named officers denied him access to the law library for no reason, it is unclear how the various things he mentions unreasonably burdened his ability to prepare his criminal defense. For example, Belfi claims he was only given one page of lined paper to draft his Complaint *in this case* and that Keith refused to provide descriptions and addresses for any of the Defendants *in this case*. (Compl. at 30.) Those allegations do not concern his defense in the *criminal case* and neither does the allegation that Keith challenged his views on the legality of his earlier involuntary mental health confinement and prevented him

from reviewing the legality of those documents. The Court notes too that Belfi was able to file a 117-page pleading in this case, making implausible his First Amendment claim that Keith's actions denied him access to the courts to file this case by limiting his supplies, etc. Belfi also does not allege that Keith, Short, Williamson, Gilbert, Rivera, or Sesay were personally involved in his being denied use of a tablet for the first seventy days he was in GWH.

It also far from clear how his defense to charges of institutional vandalism, aggravated assault, strangulation, simple assault, recklessly endangering another person, and harassment was unduly burdened by his inability to get a police report about an apparently unrelated murder, get access to the GWH Wikipedia page, or have a dictionary page printed. (*Id.* at 20-21, 28-29.) The allegation that he could only get a free printed copy of a downloadable publication "after significant argument," indicates that he did get it, and the allegation that Keith refused to print him a dictionary cited by the United States Supreme Court, even though "its [sic] available for free," implies that he could access it without printing the page. (*Id.*) While he asserts that Keith also denied him pen, paper and stamped envelopes and, construed liberally, was the person who limited his law library time to only two hours a week and was responsible for the lack of current legal books, Belfi fails to allege how his criminal defense was unduly burdened by any of this. Finally, the conclusory allegation that Sgt. Short, COs Williamson, Gilbert, Rivera, and Sesay denied him access to the law library for no reason is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Accordingly, his Sixth and First Amendment claims against Keith and the other Defendants will be dismissed.

**D. Medical Claims**

Belfi raises several claims about medical care at GWH.[8] He arrived at GWH in March 17, 2026 with concussion symptoms but an unnamed nurse only recorded that he hit his head and gave him ibuprofen. (Compl at 24.) He submitted medical slips and after "weeks" received an Xray, and after months received only an eye exam but no MRI or other testing. (*Id.*) In June he saw a specialist who determined he had a hole and scarring in his dominant left eye and referred him to Wills Eye Hospital. (*Id.*) He claims "the prison" has refused to give him this appointment. (*Id.*) Also during intake on March 17, he was asked about his prescription for Adderall for ADHD without Belfi informing her of that condition. (*Id.*) He claims GWH refused to provide the drug and did not give him a "taper" drug. (*Id.* at 25.) Following a separate incident where he hurt his knee, he received a "medical paper from an Xray . . . where it stated the prison [had his] personal, private medical records from the VA and his private doctor." (*Id.*) Belfi never provided consent for GWH to obtain his medical records. (*Id.*) Also, in June 2026, Belfi chipped a tooth and the dentist used an unsterilized Dremel diamond bit "from a random tool assortment case meant for screws" to grind down the back of his tooth and did not fill the tooth. (*Id.*)

To the extent Belfi complains that officials gained access to his medical records without his consent, the Court understands him to attempt to raise a claim under the Health Insurance

[8] Belfi also makes passing reference to the Americans with Disabilities Act ("ADA") when discussing his medical claims. (Compl. at 24-25.) He fails to allege he is disabled or suffered discrimination based on a disability. Passing references to legal provisions are insufficient to bring a plausible claim before the Court. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("a passing reference to an issue . . . will not suffice to bring that issue before this court.")). Accordingly, and ADA claim is dismissed.

Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d-6(a)(3), (b). But there is no private right of action under HIPAA. *See Petoff v. Delmonico*, No. 24-2933, 2025 WL 2986371, at *2 (3d Cir. Oct. 23, 2025) (*per curiam*) ("HIPAA does not provide a private right of action. *See Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (noting that "[e]very circuit to consider whether HIPAA created a private *right* to sue has found that it does not," and citing cases from the Second, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits (emphasis in original))). Accordingly, any such claim is dismissed with prejudice. *Johnson v. WPIC*, 782 F. App'x 169, 170-71 (3d Cir. 2019) (*per curiam*) ("[A]s the District Court explained, HIPAA does not create a private right of action" (citing *Acara v. Banks*, 470 F.3d 569, 571-72 (5th Cir. 2006))); *Crammer v. Animal Rescue League*, No. 25-0715, 2025 WL 920254, at *2 (E.D. Pa. Mar. 26, 2025) (citing cases and dismissing HIPAA claim with prejudice on statutory screening because "that statute does not provide for a federal private right of action.").

Belfi's other medical claims are also not plausible.[9] First, he does not allege that any named Defendant was personally responsible for any constitutional violation. *Rode*, 845 F.2d at

---

[9] To state a constitutional claim based on the failure to provide medical treatment, a prisoner or pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention." *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (citation modified). "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for

1207. Thus, his claim about lack of treatment for his concussion and eye issue by "the prison," as well as his claim about not being given his ADHD medication or a taper drug cannot proceed as pled. The claim about his tooth is ascribed to an unidentified dentist, but the Court notes that Belfi does not claim his tooth went untreated; he complains it was not treated in the manner in which he would have preferred because the dentist used an unsterilized instrument and did not fill the tooth. But "[m]ere negligence, . . . even if it constitutes medical malpractice[,] falls short of deliberate indifference. So does mere disagreement between the prisoner and medical personnel over the proper course of treatment." *Montanez*, 154 F.4th at 141 (first citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); then citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)); *see also Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) ("Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment."). Finally, he fails that he suffered any harm from the manner in which the tooth was treated. *See Concepcion v. Russell*, No. 25-4479, 2025 WL 2447792, at *5 (E.D. Pa. Aug. 25, 2025) ("Deliberate indifference is a high threshold and is hard to establish in the context of a tooth extraction, but such claims have been permitted to proceed past screening when the procedure greatly deviated from the standard of care, the treatment decisions were not grounded

---

serious medical needs." *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) *cert. denied*, 146 S.Ct. 2731 (2026) (citation omitted). This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm. *DiFraia v. Ransom*, 171 F.4th 622, 630 (3d Cir. 2026). "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)). [P]rison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition." *Palakovic*, 854 F.3d at 228 (quotations and citations omitted).

in medical judgment, and the plaintiff suffered harm as a result.") (citing cases). Accordingly, all medical claims will be dismissed.

### E. Defendant McGowan

The only remaining named Defendant against whom Belfi makes a specific allegation is Sgt. McGowan. Unrelated to his claims about the conditions of his confinement, Belfi claims that he never signed his bail paperwork "as it was forced down [his] throat by Sgt. McGowan when [he was] arrested" and his detention violates his Eighth Amendment rights. (*Id.* at 29.) Any claim against McGowan concerning bail paperwork is not plausible because police officers do not set an arrestee's bail. That is a judicial function performed by magisterial district judges. *See* Pa. R. Crim. P. 523 (requiring the MDJ to "consider all available information as that information is relevant to the defendant's appearance or nonappearance at subsequent proceedings, or compliance or noncompliance with the conditions of the bail bond.") Accordingly, the claim against McGowan will also be dismissed.

## IV. CONCLUSION

For the reasons stated, Belfi's Complaint will be dismissed in its entirety. The following claims and Defendants will be dismissed with prejudice because any attempt to reallege the claims would be futile:

a. All claims for money damages under the Pennsylvania Constitution.

b. All non-state actors, public defenders, private attorneys, police departments, prisons, and Philadelphia city agencies.

c. All time barred claims.

d. All claims based on shining flashlights and making verbal threats.

e. All claims under HIPAA.

f. All claims against judges by reason of absolute judicial immunity.

g. All claims against District Attorneys related to their representation of the Commonwealth in Belfi's criminal proceedings by reason of prosecutorial immunity.

The following claims are dismissed without prejudice but with no leave to amend:

a. All claims against the federal government and its agencies by reason of sovereign immunity.

b. All claims against Commonwealth entities seeking money damages by reason of Eleventh Amendment immunity.

c. All generalized claims for want of standing/jurisdiction.

d. All claims seeking release from confinement and associated money damages claims barred by *Heck* including the claim against Defendant McGowan.

e. All claims brought on behalf of any person other than Alexander James Belfi and the Estate of David Anthony Belfi.

The following claims and Defendants are dismissed without prejudice and with leave granted to file an amended complaint:

a. Claims for injunctive relief **not** involving release from custody.[10]

b. Claims against District Attorneys **not** associated with their representation of the Commonwealth in Belfi's criminal proceedings.

c. Defendants against whom there are no allegations at all.

[10] For example, Belfi seeks relief in the form of an order that GWH serve nutritional food, that he be allowed to use the law library, receive Adderall, Klonopin, weight loss drugs, proper eye care, and use of the gym twice weekly. The Court expresses no opinion on whether he can plead a plausible basis for this type of relief but, unlike a request for release from custody, the relief is not improper on its face.

d. Conditions of confinement claims based on food, water, and cell conditions.

e. Claims based on access to the law library.

f. Claims asserting deliberate indifference to a serious medical need.

g. All claims brought on behalf of the Estate of David Anthony Belfi.

A dismissal order will be entered separately that also denies the pending motions.[11] Should Belfi attempt to amend his pleading he is warned that if he again attempts to combine unrelated claims in one civil action, the Court will sever the improperly joined claims and require him to pay a separate filing fee if he wants to pursue them. In other words, the Court will not permit Belfi to continue to file kitchen sink pleadings, naming scores of individuals and entities, and thereby waste scarce judicial resources.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**

[11] The motion to appoint counsel (ECF No. 3) will be denied as premature. In determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). The motion for discovery (ECF No. 2) is also premature and the portion of that pleading that seeks temporary injunctive relief will be denied since the dismissal of the Complaint means that Belfi has not established that he is likely to succeed on the merits of any claim. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).